649 S.E.2d 724

Kenneth FERGUSON

v.

COMMONWEALTH of Virginia.

Record No. 0539–06–1.

Court of Appeals of Virginia,
Chesapeake.

Sept. 11, 2007.

354

Edward W. Webb, Public Defender (Office of the Public Defender, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Robert F. McDonnell, Attorney General, on brief), for appellee.

Present: FELTON, C.J., and FRANK and BEALES, JJ.

ROBERT P. FRANK, Judge.

Following a bench trial, Kenneth Ferguson (appellant) was convicted of two counts of malicious wounding (in violation of Code § 18.2–51), abduction (in violation of Code § 18.2–47),[1] and five counts of felony child neglect (in violation of Code § 18.2–371.1(B)). Appellant contends the trial court erred in convicting and sentencing him on one of the malicious wounding charges because the indictment charged only unlawful wounding. Appellant also challenges the sufficiency of the evidence to convict him on both malicious wounding charges and three of the five felony child neglect charges. We agree that the trial court erred in finding appellant guilty of malicious wounding on an indictment that the Commonwealth concedes charges only unlawful wounding. Accordingly, we reverse that conviction and remand for a new trial on that charge. We affirm the remaining conviction for malicious wounding, and affirm the two felony child neglect charges involving "brother" and "sister." We reverse the remaining felony child neglect conviction involving A.C.

## BACKGROUND

On appeal, we examine the evidence in the light most favorable to the Commonwealth. That principle requires us to discard the evidence of the accused in conflict with that of the Commonwealth and to regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.

---

1. The abduction conviction is not before this Court.

*Guda v. Commonwealth,* 42 Va.App. 453, 455, 592 S.E.2d 748, 749 (2004) (citation omitted).

Applying that standard, the evidence demonstrates that appellant became a foster parent to siblings A.C., "brother," and "sister"[2] in June 2000.[3] As A.C. explained, "[w]hen [we children] first moved in, everything was fine and dandy. Then after a certain period of time, things changed." A.C. recalled that initially appellant disciplined the children by requiring them to perform push-ups and sit-ups, but the children "got used to it, so [appellant] had to find other ways."

A.C. explained that appellant began to physically beat the two younger children, mostly upon suspicion of stealing food and money. Appellant would beat the children "with belts and then when that wasn't working, he started using cable cords." According to A.C., the beatings took place almost daily. After "brother" began waking up in the middle of the night and taking food from the downstairs pantry, appellant starting chaining "brother" to his bed at night. On some occasions, appellant would make A.C. chain his brother to the bed. "Brother" also remembered being chained by appellant to an exercise machine in the garage "a couple of times."

The malicious wounding indictment relevant to this appeal relates to appellant's conduct in September 2003 when appellant struck A.C. with his hands and feet, and whipped him with a cable cord after he attempted to provide excuses for his brother's and sister's conduct. A.C.'s Spanish teacher, along with his guidance counselor, took several photographs showing scabs and dried blood on A.C.'s back and left shoulder that were a result of appellant's beating him repeatedly with the cable cord.

---

**2.** A.C. was born May 4, 1986, "brother" was born February 7, 1989, and "sister" was born September 25, 1992.

**3.** As the two younger children have the same initials and as we seek to protect their privacy as much as possible, we will refer to them herein as "brother" and "sister."

All three children testified about events that occurred on December 3, 2003. "Brother" and "sister" had been in trouble and were suspended from school on December 2. Appellant, who had a recording studio located in the church where he worked, woke the children at 2:00 a.m. and ordered them to come with him to the studio. Appellant instructed the children to stand guard outside the studio on this cold December night and watch for vandalism, as a car parked in the studio's parking lot had recently been damaged by vandals. According to A.C., appellant told him "that the only time ["brother"] and ["sister"] was [sic] allowed inside was to go to the bathroom, [but] that [A.C.] could come in any time [A.C.] wanted to." Appellant placed A.C. outside of the studio standing between his brother, who stood "on the far left side," and his sister, who stood "on the far right side," and instructed him "to stand out there and keep guard." A.C. remembered that he was wearing "a hoodie, a pair of jeans and a T-shirt"; "["sister"] was wearing a light jacket that you'd wear in the spring or in the summertime and her pajamas"; and "["brother"] was wearing a jean jacket and a pair of jeans and a shirt." Because it was cold outside, A.C. went inside the studio and found coats to give to his brother and sister.[4] While the children were standing guard outside, appellant "went into their recording room and was working on some new stuff, then he fell asleep."

At 5:30 a.m., A.C. began calling his aunt to ask her if she could come get them. A.C. finally reached her at 7:00 a.m., and, upon his aunt's suggestion, A.C. started walking with "brother" and "sister" along the highway leading away from the studio. At about 7:30 a.m., the aunt picked the children up at a location that was approximately a thirty-minute walk from the studio. According to the aunt, "it was freezing out[side]." She recalled that two days later "brother" contracted pneumonia, and "sister" "had the flu."

---

4. A.C. testified that the coats he retrieved and brought to his siblings were not "heavy coats."

Appellant initially testified that he brought the children to his studio because they could not be left alone and that they were only outside for a few minutes. On cross-examination, however, appellant confirmed that he had given a statement to police admitting that he had placed the children outside the studio to stand guard because of the recent vandalism.

Several neighbors testified that the children had a bad reputation for truthfulness. In addition, "brother," who had some special needs, also had a problem with stealing. On the issue of credibility, however, the trial court specifically found the Commonwealth's witnesses more credible than appellant. The trial court found appellant guilty of two counts of malicious wounding, one count of abduction, and five counts of felony child neglect.

This appeal follows.

## ANALYSIS

### I. THE MALICIOUS WOUNDING CHARGE

■ Appellant contends the trial court erred by convicting and sentencing him on the charge of malicious wounding of "brother" because the indictment did not charge appellant acted with malicious intent. The indictment in question read:

[Appellant], Between the 19th day of June, 2000, through the 3rd day of December, 2003, feloniously, with intent to maim, disfigure, disable or kill, did shoot, stab, cut, wound or cause bodily injury to ["brother"] in violation of §§ 18.2–51 of the code of Virginia (1950) as [amended].

The Commonwealth concedes the error, noting that the ends of justice exception should apply since the error was not discovered until after the trial and the sentencing hearing.[5] The Commonwealth further requests that the case be remand-

---

5. We recognize that this error was not raised in the trial court. However, we agree with the Commonwealth that under the principles set forth in *Legette v. Commonwealth*, 33 Va.App. 221, 228, 532 S.E.2d 353, 356 (2000), "[t]he ends of justice" exception to Rule 5A:18 allows us to review this issue for the first time on appeal.

ed for sentencing on the charge of unlawful wounding, consistent with *Legette v. Commonwealth*, 33 Va.App. 221, 532 S.E.2d 353 (2000).

In *Legette*, although the accused was indicted and convicted on a charge of unlawful wounding, the trial court sentenced Legette for malicious wounding. *Id.* at 228, 532 S.E.2d at 356. This Court reversed and remanded for new sentencing consistent with the indictment and conviction. *Id.* In contrast, we note that the trial court in this case not only sentenced, but convicted, appellant of malicious wounding, an offense greater than that for which he was indicted.

"An indictment is a written accusation of a crime and is intended to inform the accused of the nature and cause of the accusation against him." *Hairston v. Commonwealth*, 2 Va.App. 211, 213, 343 S.E.2d 355, 357 (1986). "An accused has the right to be clearly informed of the charge he faces." *Williams v. Commonwealth*, 8 Va.App. 336, 341, 381 S.E.2d 361, 364 (1989). " 'The accused cannot be convicted unless the evidence brings him within the offense charged in his indictment.... [T]he indictment must charge the very offense for which a conviction is asked.' " *Scott v. Commonwealth*, 49 Va.App. 68, 73, 636 S.E.2d 893, 895 (2006) (quoting *Williams*, 8 Va.App. at 341, 381 S.E.2d at 364). " 'When a defendant is convicted of charges not included in the indictment, [either expressly or as a lesser included offense,] ... *per se* reversible error [has occurred],' and no showing of actual prejudice is required." *Id.* at 74, 636 S.E.2d at 896 (quoting *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir.1996)).

In finding that the trial court convicted appellant of an offense not charged in the indictment, we reverse that conviction. We conclude that the appropriate remedy in this case is to reverse and remand for a new trial consistent with the indictment. *See Hummer v. Commonwealth*, 122 Va. 826, 94 S.E. 157 (1917) (reversing malicious wounding conviction and remanding for a new trial when appellant was indicted for unlawful wounding). Accordingly, we reverse appellant's con-

viction for malicious wounding and remand for retrial on the unlawful wounding indictment.[6]

## II. SUFFICIENCY OF THE EVIDENCE[7]

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." *Davis v. Commonwealth,* 39 Va.App. 96, 99, 570 S.E.2d 875, 876–77 (2002); *see also McGee v. Commonwealth,* 25 Va.App. 193, 197–98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Myers v. Commonwealth,* 43 Va.App. 113, 118, 596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Kelly v. Commonwealth,* 41 Va.App. 250, 257, 584 S.E.2d 444, 447 (2003) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. *Wactor v. Commonwealth,* 38

---

6. We acknowledge that the Supreme Court has ruled that a new sentencing proceeding is the appropriate remedy when an appellate court determines that the evidence presented at trial was sufficient only to sustain a lesser-included offense of the charge for which the accused was convicted. *See Commonwealth v. South,* 272 Va. 1, 630 S.E.2d 318 (2006). The accused in *South* was convicted for the offense upon which he was charged, and the Supreme Court merely reviewed the sufficiency of that conviction. In the instant case, this appellant was convicted of an offense greater than that for which he was charged. Thus, because the conviction does not conform to the indictment, we do not review the sufficiency of the evidence.

7. We do not address the sufficiency of the evidence to sustain a conviction for unlawful wounding, as appellant was not convicted of that offense. *See Yap v. Commonwealth,* 49 Va.App. 622, 630, 643 S.E.2d 523, 526 (2007) ("Keeping in mind well-settled principles of judicial review, we decline ... to offer an advisory opinion on ... 'hypothetical situations.'" (quoting *Boyd v. County of Henrico,* 42 Va.App. 495, 520, 592 S.E.2d 768, 780 (2004) (*en banc*))).

Va.App. 375, 380, 564 S.E.2d 160, 162 (2002). In addition, "[w]itness credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder." *Foster v. Commonwealth*, 38 Va.App. 549, 554, 567 S.E.2d 547, 549 (2002).

### A. THE MALICIOUS WOUNDING CHARGE

██ Appellant contends the evidence is insufficient to sustain the conviction for the malicious wounding of A.C. Appellant admits his methods "may have been excessive" but claims that he did not intend to permanently injure A.C.[8]

Code § 18.2–51 defines malicious wounding:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony.

In *Harbaugh v. Commonwealth*, 209 Va. 695, 167 S.E.2d 329 (1969), the Virginia Supreme Court noted:

> [W]hile parents or persons standing in *loco parentis* may administer such reasonable and timely punishment as may be necessary to correct faults in a growing child, the right cannot be used as a cloak for the exercise of uncontrolled passion, and that such person may be criminally liable for assault and battery if he inflicts corporal punishment which exceeds the bounds of due moderation. We said that where a question is raised as to whether punishment had been moderate or excessive, the fact is one for the [fact finder] to determine from the attending circumstances, considering the age, size and conduct of the child, the nature of the misconduct, and the kind of marks or wounds inflicted on the body of the child.

*Id.* at 697–98, 167 S.E.2d at 332.

While *Harbaugh* dealt with assault and battery, this Court affirmed a conviction for malicious wounding under similar

---

8. Appellant asserts that he had the right to administer corporal punishment, noting "[t]he intent to correct misbehavior is not wrongful and not the result of ill will."

circumstances in *Campbell v. Commonwealth*, 12 Va.App. 476, 405 S.E.2d 1 (1991). There, a stepfather struck his three-year-old stepson fifteen times with a belt and caused injuries that required hospitalization. This Court upheld the conviction for malicious wounding, recognizing that while " 'a parent has a right to punish a child within the bounds of moderation and reason,' he or she is not legally justified in doing so to the extent that it 'exceeds due moderation.' " *Id.* at 483, 405 S.E.2d at 4 (quoting *Carpenter v. Commonwealth*, 186 Va. 851, 861, 44 S.E.2d 419, 423 (1947)). Furthermore, "if a person intentionally takes an action, the probable consequence of which is the permanent disability of another, even if permanent disability does not result, he or she can be found to have intended to cause a permanent disability." *Id.* at 484, 405 S.E.2d at 4–5.

We have defined malice as:

> Malice inheres in the intentional doing of a wrongful act without legal justification or excuse. Malice is not confined to ill will, but includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief. Malice is implied from any willful, deliberate and cruel act against another.

*Williams v. Commonwealth*, 13 Va.App. 393, 398, 412 S.E.2d 202, 205 (1991). Malice may be "inferred from acts and conduct which necessarily result in injury," and whether or not a defendant acted with malicious intent "is a question of fact." *Dawkins v. Commonwealth*, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947).

Here, the evidence, taken in the light most favorable to the Commonwealth, shows that appellant beat A.C. with his hands, kicked A.C. with his feet, and struck A.C. repeatedly with a cable cord. The record contains photographs of the injuries appellant inflicted upon A.C. The pictures illustrate that appellant whipped A.C. with the cable cord with sufficient force to inflict "welts, bruising, and scabs on [A.C.]'s back" and

left shoulder. Consequently, the trial court, acting as a rational fact finder, did not err in concluding that appellant intended to permanently injure A.C. by striking him repeatedly with his hands, feet, and a cable cord. Additionally, the trial court did not err in concluding that appellant acted with malicious intent.

### B. The felony child neglect charges[9]

Appellant argues that his actions in ordering his foster children to stand guard outside on a cold December night in a parking lot, were "not so gross, wanton and culpable as to show a reckless disregard for the children's life." In so arguing, he contends that the evidence is insufficient to sustain the convictions of three of the five felony child neglect charges.

Code § 18.2–371.1(B)(1) states:

Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

As the Virginia Supreme Court recently held in *Jones v. Commonwealth*, 272 Va. 692, 636 S.E.2d 403 (2006), "When considering the level of danger necessary to support a conviction under Code § 18.2–371.1(B)(1), we have held that 'the act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury.'" *Id.* at 701, 636 S.E.2d at 408 (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004)).

"Conduct that is 'gross, wanton and culpable' demonstrating a 'reckless disregard for human life' is synonymous with 'criminal negligence.'" *Id.* (quoting *Cable v. Commonwealth*, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)). As this Court has held,

---

9. Appellant was convicted of five counts of felony child neglect. He challenges the sufficiency of the evidence on the three that arise from the December 3, 2003 incident.

"Criminal negligence ... is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts. Thus, criminal negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his *conduct probably* would cause injury to another."

*Kelly v. Commonwealth,* 42 Va.App. 347, 356, 592 S.E.2d 353, 357 (2004) (quoting *Conrad v. Commonwealth,* 31 Va.App. 113, 121–22, 521 S.E.2d 321, 325–26 (1999) (*en banc* )) (other citations omitted). " '[W]illful,' as used in the statute, refers to conduct that must be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose. Thus, the term 'willful' ... contemplates an intentional, purposeful act or omission." *Commonwealth v. Duncan,* 267 Va. 377, 384–85, 593 S.E.2d 210, 214–15 (2004) (citations omitted).

In *Barrett,* an infant was drowned when his two-year-old sister placed him in a bathtub. The evidence established that Barrett knew that her daughter was jealous of her infant brother and had a "propensity for attempting to injure [him]." 268 Va. at 184, 597 S.E.2d at 111. Barrett also knew that her daughter liked to play in the bathtub and was able to operate the tub's faucets by herself. Barrett said that her daughter had "tried in the past" to kill the infant. *Id.*

The Supreme Court determined that the mother had knowledge of many facts that should have forewarned her that an injury was likely to occur. *Id.* at 185, 597 S.E.2d at 112. The Court held that the evidence clearly showed that conduct by Barrett had also subjected her daughter to "a substantial risk of serious injury or death." *Id.* at 186, 597 S.E.2d at 112.

Here, the evidence, taken in the light most favorable to the Commonwealth, shows that appellant had knowledge of many facts that should have forewarned that an injury was likely to occur. *See id.* at 185, 597 S.E.2d at 112. Appellant

removed all three children from the security of their beds and ordered them to stand guard against vandals. Appellant did not insure that the children were properly dressed, nor did he protect them against the temperatures of a cold December night. Although A.C. found coats inside the studio to keep his siblings warm, they were not suitable to provide warmth in winter. The two younger children were forced by appellant to stand outside for five hours, being allowed inside only to use the bathroom. Additionally, the two children, ages 11 and 14, were to guard against possible criminal activity while appellant was sleeping inside the studio. It is clear appellant exposed the two younger children not only to the winter weather, but to the danger of criminal activity. By barring the children from seeking refuge in the building, he further compounded the exposure of the children to danger evidencing a "reckless disregard for the rights [of the children] and will probably result in an injury." *Jones,* 272 Va. at 701, 636 S.E.2d at 408.

However, the same dangers faced by the two younger children were not present for A.C. He was 17 years, 7 months old. No evidence revealed he was improperly dressed. He had complete access to the building, with no restrictions. He was not continually exposed to the harsh winter conditions outside. Thus, while we do not condone appellant's treatment of A.C., we cannot conclude that appellant demonstrated a reckless disregard for A.C.'s health and safety.

Appellant acted with reckless indifference for the rights and well-being of the two younger children. The trial court did not err in so finding. We, accordingly, hold that appellant's actions on December 3, 2003 constituted criminal negligence as to "brother" and "sister" and affirm those convictions for violating Code § 18.2–371.1(B). We find that such is not the case in the A.C. child neglect case. We reverse that conviction.

## CONCLUSION

For the reasons stated, we reverse appellant's malicious wounding conviction involving "brother" and remand to the

trial court for retrial if the Commonwealth be so advised. We reverse and dismiss the felony child neglect conviction involving A.C. The remaining convictions are affirmed.

*Affirmed in part, reversed and remanded in part, and reversed and dismissed in part.*

BEALES, J., concurring, in part, and dissenting, in part.

I respectfully dissent from the portion of the majority opinion that reverses appellant's conviction for felony child neglect of A.C. I concur with the analysis and holding of the remainder of the majority opinion.

I would hold that the evidence, taken in the light most favorable to the Commonwealth, which we must do on appeal, given that the Commonwealth prevailed in the trial court on this charge, demonstrates that appellant placed A.C. in virtually the same perilous situation as his brother and sister and forced him to face essentially the same dangers as his siblings. Appellant removed all three children from their beds in the middle of the night, took them to the studio around 2:00 in the morning, ordered A.C. to remain outside on a cold December night with his brother and sister (although he allowed A.C. to come inside "any time [A.C.] wanted to"), and left A.C. in charge of the two younger children with instructions to guard the parking lot against vandals. Furthermore and perhaps even more importantly, A.C., who, by 5:30 a.m., was almost desperate to help his brother and sister escape this situation, was effectively forced to lead his siblings on a thirty-minute walk down a highway on an early December morning to meet their aunt, whom A.C. had called to rescue them from their plight. They marched down this highway for a significant distance while it was still presumably dark, before being spotted and picked up by their aunt.

By leaving A.C. in charge of his two younger siblings in a parking lot in the middle of a cold December night while appellant slept inside the studio, appellant placed A.C. in virtually as much danger, especially given A.C.'s supervisory role, as he placed A.C.'s brother and sister. As appellant's

admitted purpose in placing A.C. in charge of his siblings outside in the parking lot that night was to have them stand guard against vandals, appellant either knew or certainly should have known that his actions might well expose all three of the children to criminal activity and result in injury to *all* of the children while appellant slept comfortably in the warm studio.

The majority opinion emphasizes that A.C. was almost 18 years old. Nevertheless, subsection B of the felony child neglect statute reads, "Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony." Code § 18.2–371.1(B)(1). The statute refers to neglect of a child under 18 years of age. A.C. was 17 years old, so he was still "under the age of 18." Being almost 18 did not protect A.C. from the situation in which appellant placed him and his siblings. A.C. was a minor, and appellant was responsible for his well-being—a responsibility that appellant callously ignored.

For all of these reasons, I would not substantially differentiate between appellant's actions or omissions toward A.C. and his actions or omissions toward the other siblings.

Since I believe there is sufficient evidence to allow a trier of fact to conclude that appellant showed reckless disregard for *all* of the children's health and safety, (*see Kelly v. Commonwealth*, 42 Va.App. 347, 356, 592 S.E.2d 353, 357 (2004)), I would not only affirm appellant's conviction for felony child neglect of "brother" and "sister" but would also affirm appellant's conviction for felony child neglect of A.C.