COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey, McClanahan,
           Haley, Petty, Beales and Millette
Argued at Richmond, Virginia


KENNETH FERGUSON
                                                              OPINION BY
v.        Record No. 0539-06-1                        JUDGE ROBERT P. FRANK
                                                              APRIL 8, 2008
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Aundria D. Foster, Judge

Edward W. Webb, Public Defender (Office of the Public Defender,
on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following a bench trial, Kenneth Ferguson (appellant) was convicted of unlawful wounding

in violation of Code § 18.2-51 and felony child neglect in violation of Code § 18.2-371.1(B).

Appellant contends the trial court convicted him for malicious wounding on an indictment that

charged unlawful wounding, and he requests a new trial for unlawful wounding. Appellant also

challenges the sufficiency of the evidence to convict him of the felony child neglect charge. A

panel majority of this Court reversed the decision of the trial court as to the felony child neglect, and

remanded the other conviction for retrial on an indictment for unlawful wounding. We granted a

petition for rehearing *en banc* at the request of the Commonwealth. Upon rehearing *en banc*, we

reverse the child neglect conviction, affirm the conviction for unlawful wounding, and remand for

resentencing on that conviction.

BACKGROUND

> On appeal, we examine the evidence in the light most favorable to the Commonwealth. That principle requires us to discard the evidence of the accused in conflict with that of the Commonwealth and to regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.

Guda v. Commonwealth, 42 Va. App. 453, 455, 592 S.E.2d 748, 749 (2004) (citation omitted).

Applying that standard, the evidence demonstrates that appellant became a foster parent to siblings A.C., "brother," and "sister"[1] in June 2000.[2] As A.C. explained, "[w]hen [we children] first moved in, everything was fine and dandy. Then after a certain period of time, things changed."

A.C. explained that appellant began to physically beat the two younger children, mostly upon suspicion of stealing food and money. Appellant would beat the children "with belts and then when that wasn't working, he started using cable cords." According to A.C., the beatings took place almost daily. After "brother" began waking up in the middle of the night and taking food from the downstairs pantry, appellant starting chaining "brother" to his bed at night. On some occasions, appellant would make A.C. chain his brother to the bed.

On one occasion, "brother" ate a honey bun belonging to appellant. Appellant took "brother" to the garage to discuss the matter. The conversation ended in anger with appellant striking the child in the head with a telephone, causing "brother" to bleed. A.C. learned of the incident when he discovered "brother" in the garage holding his bleeding head in his hands.

The felony child neglect charge relevant to this appeal relates to appellant's conduct and events that occurred on December 3, 2003. "Brother" and "sister" had been in trouble and were

---

[1] A.C. was born May 4, 1986, "brother" was born February 7, 1989, and "sister" was born September 25, 1992.

[2] As the two younger children have the same initials and as we seek to protect their privacy as much as possible, we will refer to them herein as "brother" and "sister."

suspended from school on December 2. Appellant, who had a recording studio located in the church where he worked, woke the children at 2:00 a.m. and ordered them to come with him to the studio. Appellant instructed the younger two children to stand guard outside the studio on this cold December night and watch for vandalism, as a car parked in the studio's parking lot had recently been damaged by vandals. According to A.C., appellant told him "that the only time ["brother"] and ["sister"] was [sic] allowed inside was to go to the bathroom, [but] that [A.C.] could come in any time [A.C.] wanted to." A.C. remembered that he was wearing "a hoodie, a pair of jeans and a T-shirt." While the children were standing guard outside, appellant "went into their recording room and was working on some new stuff, then he fell asleep."

At 5:30 a.m., A.C. began calling his aunt to ask her if she could come get them. A.C. finally reached her at 7:00 a.m., and, upon his aunt's suggestion, A.C. started walking with "brother" and "sister" along the highway leading away from the studio. At about 7:30 a.m., the aunt picked the children up at a location that was approximately a thirty-minute walk from the studio. According to the aunt, "it was freezing out[side]."

Several neighbors testified that the children had a bad reputation for truthfulness. In addition, "brother," who had some special needs, also had a problem with stealing. On the issue of credibility, however, the trial court specifically found the Commonwealth's witnesses more credible than appellant. The trial court found appellant guilty of two counts of malicious wounding, one count of abduction, and five counts of felony child neglect.

This appeal follows.

ANALYSIS

I. *EN BANC* REVIEW

Appellant was convicted of several charges and was awarded an appeal to this Court. On appeal he argued the sufficiency of his convictions. A published panel opinion affirmed in part,

- 3 -

reversed in part, and remanded in part. See Ferguson v. Commonwealth, 50 Va. App. 351, 649

S.E.2d 724 (2007). We granted the Commonwealth's petition for a rehearing *en banc* on the

issues of sufficiency of an unlawful wounding conviction, sufficiency of a felony child neglect

conviction, and whether to remand for retrial or resentencing. Appellant did not petition for

rehearing *en banc* on the issues of sufficiency that were affirmed by the panel opinion. For the

following reasons, we hold that we do not address *en banc* the issues raised in appellant's panel

opening brief but were not subject to the petition for rehearing *en banc*. Thus, the decision of the

trial court on appellant's unchallenged convictions remains undisturbed and we reinstate the

panel opinion on the issues not before us.

This Court has previously observed that the "grant of *en banc* review vacates the prior

panel opinion *in toto* . . . ." Glenn v. Commonwealth, 49 Va. App. 413, 423 n.3, 642 S.E.2d 282,

287 n.3 (2007) (*en banc*); see also Moore v. Commonwealth, 51 Va. App. 1, 3 n.1, 654 S.E.2d

305, 306 n.1 (2007) ("Our *en banc* order had the effect of vacating the panel opinion."). To

vacate an order or a judgment is to "nullify or cancel; make void; invalidate." Black's Law

Dictionary 1584 (8th ed. 2004). Thus, this Court's grant of the petition for *en banc* review

voided the decision of the panel as to the issues before this Court *en banc*.

We are limited to the issues presented in the Commonwealth's petition. Thus, the only

issues currently before us are the ones raised in the petition for rehearing *en banc*.

## II. THE UNLAWFUL WOUNDING INDICTMENT

Appellant contends the trial court erred by convicting and sentencing him on a charge of

malicious wounding of "brother" where the indictment did not charge that appellant acted with

malicious intent. The indictment in question read:

> [Appellant], Between the 19th day of June, 2000, through the 3rd
> day of December, 2003, feloniously, with intent to maim,
> disfigure, disable or kill, did shoot, stab, cut, wound or cause

- 4 -

bodily injury to ["brother"] in violation of §§ 18.2-51 of the code of Virginia (1950) as [amended].

The Commonwealth responds that the trial court properly convicted appellant of unlawful wounding, yet erroneously imposed a sentence in excess of the statutory maximum for unlawful wounding. Arguing that Legette v. Commonwealth, 33 Va. App. 221, 532 S.E.2d 353 (2000), controls, the Commonwealth requests that the case be remanded for resentencing on the conviction for unlawful wounding of "brother." We agree.

In Legette, although the accused was indicted and convicted on a charge of unlawful wounding, the trial court sentenced Legette for malicious wounding. Id. at 228, 532 S.E.2d at 356. This Court reversed and remanded for new sentencing consistent with the indictment and conviction. Id.

Here, appellant contends that because the trial court orally announced, "I am going to find the [appellant] is guilty of malicious wounding of . . . ["brother"] as charged in [the] indictment[]," the trial court convicted appellant of malicious wounding. While we agree that the trial court used the words "malicious wounding" in the pronouncement of guilt, the written conviction order relating to the wounding of "brother" states, "the Court finds [appellant] GUILTY as charged in said indictment, to-wit: Felonious Assault (Virginia Code Section 18.2-51)."[3]

Settled principles provide that "[a] court speaks through its orders and those orders are presumed to accurately reflect what transpired." McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128 (1997); see also Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979) (holding that when a court's statements from the bench conflict with its written order, the order controls).

---

[3] Both unlawful wounding and malicious wounding are charged in Code § 18.2-51, and both constitute "felonious assaults."

We note that the indictment for the wounding of "brother" lacks any reference to malice and therefore charges only an unlawful wounding. Based on the trial court's written order, we find that the trial court convicted appellant of the offense charged in the indictment, specifically, unlawful wounding.

### III. SUFFICIENCY OF THE EVIDENCE

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). In addition, "[w]itness credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder." Foster v. Commonwealth, 38 Va. App. 549, 554, 567 S.E.2d 547, 549 (2002).

A. THE UNLAWFUL WOUNDING CONVICTION

Appellant contends the evidence is insufficient to sustain the conviction for the malicious

wounding of "brother."[4]

Code § 18.2-51 defines unlawful wounding:

> If any person maliciously shoot, stab, cut, or wound any person or
> by any means cause him bodily injury, with the intent to maim,
> disfigure, disable, or kill, he shall, except where it is otherwise
> provided, be guilty of a Class 3 felony. If such act be done
> unlawfully but not maliciously, with the intent aforesaid, the
> offender shall be guilty of a Class 6 felony.

In Harbaugh v. Commonwealth, 209 Va. 695, 167 S.E.2d 329 (1969), the Virginia Supreme

Court noted:

> [W]hile parents or persons standing in *loco parentis* may
> administer such reasonable and timely punishment as may be
> necessary to correct faults in a growing child, the right cannot be
> used as a cloak for the exercise of uncontrolled passion, and that
> such person may be criminally liable for assault and battery if he
> inflicts corporal punishment which exceeds the bounds of due
> moderation. We said that where a question is raised as to whether
> punishment had been moderate or excessive, the fact is one for the
> [fact finder] to determine from the attending circumstances,
> considering the age, size and conduct of the child, the nature of the
> misconduct, and the kind of marks or wounds inflicted on the body
> of the child.

Id. at 697-98, 167 S.E.2d at 332.

While Harbaugh dealt with assault and battery, this Court affirmed a conviction for

malicious wounding under similar circumstances in Campbell v. Commonwealth, 12 Va. App.

476, 405 S.E.2d 1 (1991). There, a stepfather struck his three-year-old stepson fifteen times with

a belt and caused injuries that required hospitalization. This Court upheld the conviction for

malicious wounding, recognizing that while "'a parent has a right to punish a child within the

---

[4] For purposes of his argument on appeal, appellant characterizes his conviction as "malicious wounding." As stated above, we find appellant was convicted of unlawful wounding and review his sufficiency issue as such.

bounds of moderation and reason,' he or she is not legally justified in doing so to the extent that it 'exceeds due moderation.'" Id. at 483, 405 S.E.2d at 4 (quoting Carpenter v. Commonwealth, 186 Va. 851, 861, 44 S.E.2d 419, 423 (1947)).  Furthermore, "if a person intentionally takes an action, the probable consequence of which is the permanent disability of another, even if permanent disability does not result, he or she can be found to have intended to cause a permanent disability."  Id. at 484, 405 S.E.2d at 4-5.

Here, the evidence, taken in the light most favorable to the Commonwealth, shows that appellant struck "brother" in the head with a telephone.  The blow, which broke the skin and caused "brother'' to bleed, was motivated by the child taking a pastry from the food cabinet and subsequently lying about it.  From this evidence, the trial court was able to reasonably conclude that appellant intended to injure the child without lawful justification.  See Campbell, 12 Va. App. at 483, 405 S.E.2d at 4 ("The critical issue is . . . the intent with which the injuries were inflicted.").

The trial court sentenced appellant on the unlawful wounding conviction to twenty years imprisonment with fifteen years suspended.  Unlawful wounding, a Class 6 felony, is punishable by a maximum term of five years imprisonment.  See Code § 18.2-10.  As the trial court erroneously sentenced appellant in excess of the statutory maximum, we remand this issue to the trial court with instructions to re-sentence appellant in accordance with his Class 6 conviction. Legette, 33 Va. App. 221, 532 S.E.2d 353.

### B.  THE FELONY CHILD NEGLECT CHARGE

Appellant argues that his actions in ordering his foster child to stand outside in a parking lot on a cold December night were not so gross, wanton, and culpable as to show a reckless disregard for the child's life.  In so arguing, he contends that the evidence is insufficient to sustain his conviction for felony child neglect.

Code § 18.2-371.1(B)(1) states:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

As the Virginia Supreme Court recently held in Jones v. Commonwealth, 272 Va. 692, 636 S.E.2d 403 (2006), "[w]hen considering the level of danger necessary to support a conviction under Code § 18.2-371.1(B)(1), we have held that 'the act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury.'" Id. at 701, 636 S.E.2d at 408 (quoting Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004)).

"Conduct that is 'gross, wanton and culpable' demonstrating a 'reckless disregard for human life' is synonymous with 'criminal negligence.'" Id. (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)). As this Court has held,

> Criminal negligence . . . is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts. Thus, criminal negligence "is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his *conduct probably* would cause injury to another."

Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 357 (2004) (quoting Tubman v. Commonwealth, 3 Va. App. 267, 271, 348 S.E.2d 871, 873 (1986)) (other citations omitted). "'[W]illful,' as used in the statute, refers to conduct that must be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose. Thus, the term 'willful' . . . contemplates an intentional, purposeful act or omission." Commonwealth v. Duncan, 267 Va. 377, 384-85, 593 S.E.2d 210, 214-15 (2004) (citations omitted).

- 9 -

In Barrett, an infant was drowned when his two-year-old sister placed him in a bathtub. The evidence established that Barrett knew that her daughter was jealous of her infant brother and had a "propensity for attempting to injure [him]." 268 Va. at 184, 597 S.E.2d at 111. Barrett also knew that her daughter liked to play in the bathtub and was able to operate the tub's faucets by herself. Barrett said that her daughter had "tried in the past" to kill the infant. Id.

The Supreme Court determined that the mother had knowledge of many facts that should have forewarned her that an injury was likely to occur. Id. at 185, 597 S.E.2d at 112. The Court held that the evidence clearly showed that conduct by Barrett had also subjected her daughter to "a substantial risk of serious injury or death." Id. at 186, 597 S.E.2d at 112.

The evidence reveals that A.C. was 17 years, 7 months old. He was appropriately dressed for the winter temperature, and he had complete access to the building with no restrictions. He was not continually exposed to the harsh winter conditions outside, nor was he required to guard against potential criminal activity. Thus, while we do not condone appellant's treatment of A.C., we cannot conclude that appellant demonstrated a reckless disregard for A.C.'s health and safety. Accordingly, we reverse that conviction.

CONCLUSION

For the reasons stated, we affirm appellant's unlawful wounding conviction and remand for resentencing. We reverse and dismiss the child neglect conviction.

Affirmed in part,
reversed in part,
and remanded in part.

- 10 -

Beales, J., with whom Humphreys, Kelsey, and McClanahan, JJ., join, concurring, in part, and dissenting, in part.

I respectfully dissent from Section III.B, "The Felony Child Neglect Charge," of the majority opinion. I find the evidence, taken in the light most favorable to the Commonwealth, which we must do on appeal since the Commonwealth prevailed in the trial court, would allow a rational fact finder to conclude that appellant, by placing A.C. in a supervisory role over his brother and sister, forced A.C. to face the same, if not potentially greater, dangers as his siblings. Therefore, I would affirm the felony child neglect conviction. I, however, concur with the remainder of the majority opinion's holding and analysis.

In reviewing this record, I am mindful that "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The Supreme Court explained further:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

Id.

Here, the record reflects that appellant removed all three children from their beds around 2:00 a.m. on a mid-December night and took them to his studio. Appellant ordered A.C.'s brother and sister to guard against vandalism in a parking lot where that very crime had recently

occurred.  Appellant placed A.C. in charge of brother and sister and told A.C. to make sure his siblings remained outside at their posts – one child on "the far left side" and the other child on "the far right side" – at the back of the building.  Appellant also told A.C. to make sure his siblings did not fall asleep.  Although appellant told A.C. that he could come inside, A.C. was forced to spend most of the night outside making sure his brother and sister remained awake at their posts.  After following these instructions for several hours, A.C. desperately began to telephone his aunt in an effort to escape the situation into which appellant, who was asleep inside the studio, had placed the children.  After finally reaching his aunt, A.C. led his siblings on a thirty-minute trek down a highway in an attempt to flee from appellant and the situation into which he had placed them.  The three minors marched down this highway for a significant distance in the early morning hours of this cold December night before being spotted and picked up by their aunt.

By appointing A.C. the *de facto* guard of his siblings and instructing him to make sure brother and sister remained at their posts, appellant, who was asleep inside, placed A.C. in as much danger as he placed brother and sister.  Given the recent vandalism in the parking lot and the orders to guard against new crimes, appellant's actions potentially exposed *all three* of the children to criminal activity that could have resulted in injury to *all* of the children, including A.C., especially given A.C.'s protective nature regarding his siblings.  By placing all three minor children in a situation where they could come in contact with a criminal element, appellant acted with reckless disregard for the health and safety of all three minor children.

Appellant potentially placed A.C. in a more threatening situation by making him responsible for his siblings.  First, appellant ordered A.C. to supervise his siblings in a situation that constituted abuse of the younger children.  In effect, appellant forced A.C. to become an abuser like himself.  By charging A.C. with the responsibility of supervising his siblings and

- 12 -

directing A.C. to make sure brother and sister remained outside on guard duty, appellant effectively ordered A.C. to abuse his own siblings, as appellant had done in the past when he commanded A.C. to chain brother to brother's bed at night in the bedroom that the boys shared. Moreover, appellant certainly should have known that A.C., who had previously defended his brother and sister from appellant even when it involved injury to himself, would risk harm to himself again in order to defend his brother and sister against vandals or other dangers. Furthermore, appellant should have anticipated A.C.'s desperation to save his brother and sister from this perilous situation. In other words, the escape attempted by A.C. and his siblings was foreseeable and exposed A.C. to additional dangers such as the traffic on a city highway on a dark early December morning, other criminal elements, and prolonged exposure to cold weather.

While the majority opinion emphasizes that A.C. was almost eighteen years old, I believe that the General Assembly intended to protect all minor children from felony neglect when it enacted Code § 18.2-371.1(B)(1), even those close to the age of majority. Subsection B of the felony child neglect statute states, "Any parent, guardian, or other person responsible for the care of *a child under the age of 18* whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony." Code § 18.2-371.1(B)(1) (emphasis added). "When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language." Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002). Therefore, given the clear, unambiguous nature of that language – "under the age of 18" – I do not believe this Court can go about interpreting the statute otherwise.

Although I certainly recognize that differences in the age of a minor may be a practical factor to weigh in the totality of the circumstances of a felony child neglect case, I nevertheless believe that being seventeen years old did not protect A.C. from the perilous situation he faced.

A.C. was still a minor, and appellant was therefore responsible for his well-being (despite the fact that appellant callously ignored that responsibility). Finally, in my view, by holding that *no* rational trier of fact could have found appellant guilty on this charge, the majority opinion makes it virtually impossible to uphold almost any felony child neglect conviction in a case involving a seventeen-year-old victim. See Jackson, 443 U.S. at 319.

Because I indeed cannot say that no rational trial judge could find appellant guilty on this charge, I would, consequently, affirm appellant's conviction for felony child neglect of A.C. Therefore, I must dissent from Section III.B of the majority opinion.

I do, however, concur in the remand of the conviction for unlawful wounding for resentencing.