UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Petty and Senior Judge Bumgardner
Argued at Chesapeake, Virginia

DAINNA LYNN KEMP

MEMORANDUM OPINION[*] BY
v.      Record No. 1338-13-1      JUDGE WILLIAM G. PETTY
AUGUST 26, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF YORK COUNTY
Richard Y. AtLee, Jr., Judge

Charles E. Haden for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Dainna Kemp was convicted of child neglect under Code § 18.2-371.1(B). On appeal,

Kemp argues that the circuit court erred in holding that the evidence was sufficient to convict her

because the evidence did not demonstrate that her actions were so gross, wanton, and culpable as

to show a reckless disregard for human life. For the reasons stated below, we reverse Kemp's

conviction.

I.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Kemp's daughter, the victim in this case, was seventeen and a half years old at the time of the offense. The charges against Kemp were premised upon the condition of the house in which Kemp's daughter was living.

The evidence showed that the house was in a deplorable condition, and the daughter was living in what the trial court described as "squalor." On June 30, 2012, the daughter's probation officer visited the house to ensure the daughter was complying with the conditions of her release. Although the probation officer had visited previously, she had not been inside the house until that day. She found the house to be very hot, foul smelling, and full of dog hair and feces. The house's kitchen was filthy. The refrigerator contained no food. Rotting, liquefied bananas were in a cabinet and dripping onto a counter. There were dirty, moldy pans on the stove, and the kitchen contained many flies due to its condition.

The other areas of the house were in varying states of disrepair. The parents' bedroom contained ashtrays on the end tables with "mounds and mounds" of cigarette butts. Piles of clothes were in various areas of the house. The bathroom had a hole in the floor and a broken shower door. A portion of the ceiling in the house was falling down due to a leak. The front door of the house did not have a door knob, although it did have a deadbolt. Trash and empty food containers were scattered throughout the house. There were clean and dirty insulin syringes in both the kitchen and Kemp's husband's former bedroom. This bedroom also contained empty pill bottles, bottles containing urine, and a rifle. An "airsoft gun"[1] and an antique rifle were also

---

[1] "'Airsoft' guns are described as toy replicas that look like real guns, but shoot lightweight plastic pellets instead of metal BBs or live ammunition." An-Hung Yao v. State, 975 N.E.2d 1273, 1275 n.1 (Ind. 2012)

found in the house. The Commonwealth presented a series of seventy photographs showing the condition of the house.[2]

At trial, the daughter testified that she lived in the house alone about four nights a week and that Kemp stayed with her the other nights of the week. The daughter further stated that she had bronchitis on the day her probation officer visited. However, there was no medical evidence put on as to the cause of the bronchitis, and the daughter testified that she "[got] it quite often," including the day of the trial. The daughter also admitted to smoking cigarettes. The daughter said she ate meals at her place of employment and that she had plenty to eat.

At the time of the offense, the family was in the process of moving out of the house. Moreover, Kemp, her husband, and her other daughter were living in Kemp's mother's house at the time because Kemp's daughter had a restraining order against Kemp's husband, the daughter's father. Thus, Kemp's daughter could not live in the same house as Kemp's husband. The housing problem was further exacerbated because the daughter was on house arrest due to an unrelated incident.

At trial, Kemp testified on her own behalf. She stated that either she or her mother was present at the house every night the daughter was there after the daughter was placed on house arrest. Kemp also stated that she brought her daughter food daily. Kemp's daughter also ate at Wendy's, her place of employment. Kemp stated that the house was not as dirty, and did not contain the dog feces or trash, when she left for work on June 30, 2012. Kemp did admit the house was a mess.

---

[2] The photographs were not individually numbered or otherwise identified. Kemp's daughter described what a number of the photographs represented. The record, however, is silent as to exactly which of the photographs she was referring to throughout her testimony.

Kemp argues that the evidence was insufficient to prove that her acts or omissions were so "gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371.1(B). We agree.

Kemp challenges the sufficiency of the evidence; therefore, we must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 923 (2008)).

Code § 18.2-371.1(B) provides:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

In order for a person to be convicted of felony child neglect, the Commonwealth must prove beyond a reasonable doubt that the accused committed a "willful act or omission in the care" of a child.

The Supreme Court has said that

> "the term 'willful act [or omission]' imports knowledge and consciousness that injury will result from the act done. The act [or

omission] done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." We have also said that the term "willful," as used in the statute, refers to conduct that "must be knowing or intentional, rather than accidental, and [undertaken] without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose. . . . Thus, the term 'willful' . . . contemplates an intentional, purposeful act or omission."

Morris v. Commonwealth, 272 Va. 732, 738, 636 S.E.2d 436, 439 (2006) (citations omitted).

Furthermore, the Commonwealth also must prove that the act or omission is "so gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371.1(B)(1).

[T]he term "gross, wanton and culpable" describes conduct, whether by action or omission.

"The word 'gross' means 'aggravated or increased negligence' while the word 'culpable' means 'deserving of blame or censure.' 'Gross negligence' is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

Morris, 272 Va. at 739, 636 S.E.2d at 439-40 (citations omitted). Thus, the statute requires the Commonwealth to prove that Kemp, "through [her] willful act or omission, showed a reckless disregard for [her child's] life." Jones v. Commonwealth, 272 Va. 692, 698, 636 S.E.2d 403, 406 (2006).

The trial court, in convicting Kemp, and after reviewing the condition of the home, held that "Kemp displayed an utter disregard for the safety and wellbeing [of her daughter] by allowing the state of that home to be in . . . that utterly deplorable condition." Moreover, the trial court stated that the home posed a risk to the safety and wellbeing of a child of any age.

After reviewing the evidence, and the trial court's ruling, we conclude that there was simply no evidence that Kemp committed a willful act or omission in the care of her daughter that was so gross, wanton, and culpable as to show a reckless disregard for human life.

The only evidence produced by the Commonwealth was evidence of unsanitary living conditions. Admittedly, the house was filthy. Nevertheless, the condition of the house did not demonstrate a reckless disregard for human life on the part of Kemp. The daughter testified that she had no physical disabilities and that she was well nourished. Although the house was hot on the date of the probation officer's visit, there was a working air conditioner, and the daughter testified she had a large fan. There was no medical evidence that the condition of the house exposed the daughter to any risk of disease or illness; in fact, the daughter testified that even though the house had been in that condition for five or six months, she did not have any physical disabilities. Although she said she had bronchitis, there was no testimony that it was caused by the conditions in the house rather than her use of cigarettes. Thus, any conclusion that the conditions of the house subjected the daughter to a substantial risk of serious injury or a risk of death is unsupported by the evidence.[3]

Furthermore, the daughter was seventeen and a half years old. While we recognize that the statute protects a child of this age, the child's age is a factor to consider in evaluating whether a particular risk exposed the child to serious injury or death. See Ferguson v. Commonwealth, 51 Va. App. 427, 658 S.E.2d 692 (2008) (reversing a conviction of child neglect where the

_____

[3] The Commonwealth argues that "the dangers inherent in such a situation could be inferred by the fact finder as a matter of common knowledge." Commonwealth v. Duncan, 267 Va. 377, 386, 593 S.E.2d 210, 215 (2004). There, the Supreme Court recognized that it was a matter of common knowledge that feeding a six-month-old baby, who had not had any food or liquids for seven hours, an alcoholic beverage that was 2.8% alcohol by volume would present a substantial risk of serious injury or risk of death to the baby. Here, however, there is no such logical connection between the daughter's living conditions and such substantial risk. Thus, it cannot be said that it is a matter of common knowledge that injury, illness, or death was a likely result of the daughter's living conditions.

defendant ordered his seventeen-and-a-half-year-old foster child to stand outside in a parking lot on a cold winter night).

For example, while it may be that a parent is guilty of negligence so gross, wanton, and culpable as to show a reckless disregard for human life by allowing a five-year-old child to play beside a busy street, no such negligence can be inferred from allowing a seventeen-year-old child to do the same. The age of the child is a factor that must be considered in determining whether a parent has demonstrated a reckless disregard for her child's life under Code § 18.2-371.1(B). A filthy house may pose a health risk or danger to a small child in a crib, but it does not necessarily pose the same risk to an older child who is capable of avoiding or mitigating the harmful conditions. The Commonwealth points to the dog feces, rotten bananas, cigarette butts, and bottles of urine as significant health risks to the child. However, the daughter was fully capable of avoiding any potential health risks they might pose. Like the seventeen-year-old child playing near a busy street, the daughter here was both physically and mentally mature enough to recognize and avoid any dangers present in the house.

In essence, the Commonwealth argues that Code § 18.2-371.1(B) criminalizes the keeping of a filthy home, if a child under the age of eighteen is exposed to the filth. There is no question that Kemp kept a deplorably-filthy house. But keeping such a filthy house does not rise to the level of a felony where there was no evidence to indicate that the conditions demonstrated a reckless disregard for human life or that they subjected the child to a substantial risk of serious injury or death. Therefore, we hold that the trial court erred in ruling that the evidence was sufficient to convict Kemp of child neglect under Code § 18.2-371.1(B).

### III. CONCLUSION

For the foregoing reasons, we reverse Kemp's conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>