PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

CHERYL KASHAWN JONES

OPINION BY

v. Record No. 052533            JUSTICE G. STEVEN AGEE

November 3, 2006

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Cheryl Kashawn Jones appeals from the judgment of the Court of Appeals of Virginia, which affirmed her conviction for felony child neglect, in violation of Code § 18.2-371.1(B)(1), in the Circuit Court of the City of Norfolk. On appeal, she contends the evidence was insufficient to prove she willfully failed to provide care for her child in a manner so gross, wanton, and culpable as to show a reckless disregard for the child's life. For the reasons set forth below, we will affirm the judgment of the Court of Appeals.

I.  RELEVANT FACTS AND PROCEEDINGS BELOW

Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party in the trial court. "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004); see also Burns v. Commonwealth, 261 Va. 307, 313-14, 541 S.E.2d 872, 877-78, cert. denied, 534 U.S. 1043 (2001).

The evidence at trial established that, on October 23, 2003, fifteen City of Norfolk police officers, dressed in body armor and ballistic helmets, executed a search warrant at Jones' apartment. During the week prior to execution of this warrant, officers gathered evidence sufficient to obtain an immediate-entry search warrant for Jones' apartment.

Investigator Frank Curott[1] of the Norfolk Police Department's Vice and Narcotics Division testified that police conducted extensive surveillance of Jones' apartment and observed heavy foot traffic going in and out. A confidential informant, who made undercover purchases of narcotics at the apartment, informed the police that lookouts were stationed both day and night in the hallways leading to the apartment. The informant also told police that weapons were in the apartment and that several individuals were selling narcotics from it.

As police arrived to execute the search warrant, Jones' brother stepped out of the apartment. Upon seeing the officers, he attempted to run back inside, but Investigator Curott pushed him to the floor. Curott and the other officers, with weapons drawn, then entered the apartment which was filled with trash and debris. In moving through the apartment, Curott first saw Jones, her sister, and her sister's boyfriend in the living

room. Curott then entered a bedroom where a child was alone on the bed doing his homework. In the next bedroom, Curott found seven other unattended children ranging in age from infancy to seven or eight years old.

The child in the first bedroom was Jones' eight-year old son, Donya Deshawn Jones, who was working on his schoolwork while lounging on the bed with his head toward the foot of the bed and his feet by a nightstand at the head of the bed. On the nightstand within arm's reach of the young boy, Curott found a medicine bottle containing fourteen capsules of heroin. The cap of the medicine bottle contained an instruction to "Push Down & Turn" to open the container, sometimes termed a "childproof" container. Under the mattress below the child's head, Curott found a dinner plate dusted with cocaine residue and drug packaging materials. Jones was indicted for violating Code § 18.2-371.1(B)(1) with regard to her son, Donya.[2]

Evidence at Jones' bench trial established that she sold approximately twenty capsules of heroin daily from the apartment. When asked why she left her son alone in the bedroom with capsules of heroin within his reach, Jones replied: "I

[1] The name of Investigator Curott was spelled "Currot" in the Court of Appeals opinion. According to the trial transcript, the correct spelling is "C-U-R-O-T-T."

[2] Although a total of eight children were in the apartment at the time of the police raid, Jones is only charged with violating Code 18.2-371.1(B)(1) in regard to Donya.

watch at least ten kids, and I can't keep track of everything."

In finding the evidence sufficient to convict Jones on the charge of felony child neglect, the trial court explained its decision as follows:

> Given the evidence of what the behavior was and the actions that were ongoing inside of the residence just moments prior to and at the time of the execution of the search warrant, that is always part and parcel of the drug trade. There's evidence that there were guards outside. . . . that there was foot traffic . . . for the week prior. . . .
>
> The child was in proximity to a container of 14 capsules of heroin in excess of a gram, 1.015 grams. . . .
>
> And although you make a point about a childproof container, this is an eight-year old child. This is not a baby whose motor skills have not developed. . . . And the mother's statement admits that she's selling some 20 capsules a day for the last three months out of the apartment.
>
> The fact that this was there demonstrates. . . further evidence of an ongoing activity on her part. So she's placed him in a position where he has direct, personal access to a drug that can cause death if overdosed. . . .
>
> So she's placed her child in a position where he's likely or reasonably likely to perhaps take the drug by accident and unwittingly and seriously injure himself or kill himself. Then on top of that, she's engaged in an activity that creates a high risk of violence. . . .
>
> [W]hen a large team of narcotics investigators armed with a no-knock search warrant goes into an apartment in heavy body armor and armed with their weapons drawn, anything can happen. . . .
>
> [T]hose are the things that the mother fails to account for by engaging in this high risk, dangerous activity with her son right there in the middle of it all.

On appeal to the Court of Appeals, Jones contended that the possession and sale of heroin and cocaine, at her residence and

in close proximity to her eight-year old son, without more, did not violate Code § 18.2-371.1(B)(1).  The Court of Appeals disagreed and affirmed Jones' conviction, finding that "[i]t is this drug activity, both the sale of drugs from the apartment and the presence of a controlled substance in close proximity to the child, that constitutes the willful act required by the statute."  Jones v. Commonwealth, 46 Va. App. 713, 719, 621 S.E.2d 676, 679 (2005).  The Court of Appeals concluded "[t]his type of inherently dangerous situation clearly poses a substantial risk of serious bodily injury or harm to the child."  Id. at 724, 621 S.E.2d at 681.  We awarded Jones this appeal.

## II.  ANALYSIS

On appeal to this Court, Jones contends, as she did below, that her conviction under Code § 18.2-371.1(B)(1) should be reversed because her conduct was insufficient to demonstrate a gross, wanton, and willful disregard for human life. Specifically, she contends that her possession and sale of illicit drugs from her residence and the presence of such drugs in close proximity to her son, without more, does not constitute felony child neglect under Code § 18.2-371.1(B)(1).  Jones also argues that the Commonwealth only proved the mere possibility of harm to Donya and that the Commonwealth was required to demonstrate the probability of harm beyond a reasonable doubt in order to sustain a conviction.  Jones further contends that to

5

convict her of felony child neglect would be to establish a per se rule that any time there are illicit drugs in a home, the parent or person responsible for a child is guilty of violating Code § 18.2-371.1(B)(1).

In response, the Commonwealth argues that although Donya did not ingest the heroin capsules or cocaine residue or sustain a gunshot wound from the police raid, this does not diminish the probability of serious injury or death under those circumstances. Further, the Commonwealth argues no per se rule was applied in this case as the Court of Appeals and the trial court relied on the totality of the evidence in their respective decisions.

Code § 18.2-371.1(B) provides in relevant part:

(1) Any parent, guardian or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

To support a conviction under this statute, the Commonwealth had to establish that Jones, through her willful act or omission, showed a reckless disregard for her son's life. Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 110-11 (2004). "[S]uch 'reckless disregard' can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as a to a risk of death, because exposure to either type

6

of risk can endanger the child's life.' " Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004); see also Barrett, 268 Va. at 186, 597 S.E.2d at 112.

Jones appears to argue that the standard of proof to show "reckless disregard" under Code § 18.2-371.1(B)(1) was altered in Duncan and Barrett from acts showing a "probability" of serious injury or death to an unexplained lesser standard of "substantial risk" of such injury. This argument has no merit. In Duncan and Barrett we specifically cited to Cable v. Commonwealth, 243 Va. 236, 415 S.E.2d 218 (1992), and quoted the Cable standard in Barrett that the defendant's conduct was "reasonably calculated to produce injury, or which [made] it not improbable that injury [would] be occasioned, and [she knew], or [was] charged with the knowledge of, the probable results of [her] acts." Barrett, 268 Va. at 184, 597 S.E.2d at 111 (quoting Cable, 243 Va. at 240, 415 S.E.2d at 220). To the extent any confusion could exist, we consider a substantial risk of injury and a probability of injury to be synonymous or interchangeable terms for purposes of our analysis under Code § 18.2-371.1(B)(1).

To be willful, conduct "must be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose." Duncan, 267 Va. at 384, 593 S.E.2d at 214. When

examining the term "willful" in the context of Code § 18.2-371.1(B)(1), the term "contemplates an intentional, purposeful act or omission in the care of a child by one responsible for such child's care." Id. at 385, 593 S.E.2d at 215. Ordinary negligence resulting from inattention and inadvertence is insufficient. See Barrett, 268 Va. at 184, 597 S.E.2d at 111. Unlike Code § 18.2-371.1(A), which requires an actual injury for a conviction, subsection (B)(1) "does not require that a child actually suffer serious injury as a result of a defendant's acts or omissions." Duncan, 267 Va. at 385, 593 S.E.2d at 215.

This Court has not addressed whether a child's mere proximity to illegal narcotics creates a substantial risk of bodily harm. In that regard, it is instructive to consider the decisions of the highest courts of other states in analogous situations construing statutes like Code § 18.2-371.1(B)(1).

For example, in State v. Graham, 109 P.3d 285 (N.M. 2005), the New Mexico Supreme Court upheld a felony child abuse conviction against parents who left marijuana and drug paraphernalia in the immediate vicinity of young children. Id. at 291. The evidence at trial in Graham showed that police officers executing a search warrant at defendant's house discovered crack cocaine and several plastic bags with marijuana in the house, but also found a marijuana "roach" on the living room floor and a marijuana "bud" in a baby's crib. Id. at 287.

8

In upholding the defendant's conviction, the Graham court rejected his claim of insufficient evidence, ruling "[w]e believe that this evidence supports a reasonable inference that the children were in the immediate vicinity of the marijuana, that it was accessible to them, and that there was a reasonable possibility that they would come in contact with the controlled substance." Id. at 289.

Similarly, in State v. Padua, 869 A.2d 192 (Conn. 2005), the Supreme Court of Connecticut affirmed the convictions of three defendants who kept marijuana in close proximity to two children, ages seven and three. These convictions resulted from evidence discovered when police officers executed a search warrant on the defendants' home and found marijuana on the kitchen table being packaged for sale and large amounts of marijuana in different locations throughout the house. Id. at 199.

In affirming the convictions under the Connecticut child endangerment statute, the Connecticut Supreme Court concluded that the only question the jury needed to answer was whether the ingestion, oral or otherwise, of marijuana would be likely to injure the child. Id. at 207. Under the circumstances of that case, the court concluded that the mere presence of marijuana was sufficient to create a likelihood of injury to the child. Id. at 208.

9

In the case at bar, much as in Padua and Graham, the illegal drugs were within arm's reach of an unattended young child. The record reflects that Donya was found alone in a bedroom lying on the bed doing his homework. On the nightstand within arm's reach of Donya was a medicine bottle, closed with a childproof cap, containing fourteen capsules of heroin. Under the mattress below his head was a dinner plate with cocaine residue and drug packaging materials. Jones does not contest that she knew the drugs were in the bedroom with Donya.

As we stated in Duncan, "based on the evidence presented, the dangers inherent in such a situation could be inferred by the fact finder as a matter of common knowledge." Duncan, 267 Va. at 386, 593 S.E.2d at 215. Thus, we find that a reasonable fact finder could infer, based on common knowledge, that there are inherent dangers in placing heroin capsules and cocaine residue on a plate within reach of an unattended child.

Jones' suggestion that the childproof container would have prevented Donya from opening the bottle and ingesting the drugs is as unconvincing to us as it was to the trial court. Donya was an eight-year old boy who was reading and writing his homework at the time of the execution of the search warrant. Thus, there is no basis to conjecture he was unable to follow the simple instructions, "Push Down & Turn" printed on the bottle cap and take all the heroin capsules he wanted.

10

In addition to the presence of illegal narcotics within close proximity of an unattended child, the record also reflects that Jones routinely sold heroin from her apartment while Donya and other young children were present.  In the three months prior to the execution of the search warrant, Jones admitted she had been selling approximately 20 capsules of heroin a day.  Before the police raid, the police conducted extensive surveillance of the apartment and gathered evidence that narcotics and weapons were present in the apartment.  Jones' drug business required the service of lookouts outside the apartment, indicating that potentially dangerous conditions were present, whether from the police raid which occurred, or from the other attendant dangers of violence in the drug trade.  See Michigan v. Summers, 452 U.S. 692, 702 (1981) ("The execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence").[3]

The totality of this evidence, including the presence of harmful drugs within arm's reach of an unattended child and the

---

[3] See also United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005) ("it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction"); United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998) ("the connection between illegal drug operations and guns in our society is a tight one").

child's placement within a drug house with the attendant dangers that entailed, is sufficient to support Jones' conviction under Code § 18.2-371.1(B)(1).

Jones argues, however, that this evidence could not support a finding that that her actions created a probability of harm to her son, rather than a mere possibility of harm. She contends that to convict her of felony child neglect in this situation would be to establish a per se rule that any time there are illicit drugs in a home with young children, the parent or other responsible person is guilty of felony child abuse.

When considering the level of danger necessary to support a conviction under Code § 18.2-371.1(B)(1), we have held that "the act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." Barrett, 268 Va. at 183, 597 S.E.2d at 111. Conduct that is "gross, wanton and culpable" demonstrating a "reckless disregard for human life" is synonymous with "criminal negligence." Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992). Criminal negligence is "judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts." Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 357 (2004) (citations omitted).

We agree with Jones that a conviction under Code § 18.2-371.1(B)(1) requires more than a mere possibility of harm. In the case at bar, however, the totality of the evidence proves a substantial or probable risk of harm existed. Under an objective standard, Jones knew or should have known that placing fourteen capsules of heroin and a plate with cocaine residue in the same room as her unattended eight-year old son created a substantial risk of serious injury. She also knew or should have known that her continuous and illegal drug activity at the apartment when her young child was present also created a substantial risk of serious injury from the dangers inherent in the illicit drug trade.

Our decision in this case is not a per se rule for violation of Code § 18.2-371.1(B)(1) when the child is living in the environment of the drug trade. However, neither the trial court nor the Court of Appeals based their respective judgments on a per se rule, but on the totality of evidence as presented in this case.[4] Based on that totality of evidence, as previously noted, the evidence clearly supports Jones' conviction.

_____

[4] The trial court's judgment was based on Jones' actions placing Donya "in a position where he has direct, personal access to a drug that can cause death" and "on top of that, she's engaged in an activity that creates a high risk of violence." Similarly, the Court of Appeals held: "It is this drug activity, both the sale of drugs from the apartment and the presence of a controlled substance in close proximity to the child, that constitutes the willful act required by the

CONCLUSION

By engaging in the routine sale of drugs from her home and permitting her unattended young child access to those drugs, Jones committed willful acts and omissions that were "so gross, wanton and culpable as to show a reckless disregard for human life" under Code § 18.2-371.1(B)(1). Therefore, we will affirm the judgment of the Court of Appeals.

Affirmed.

---

statute." <u>Jones</u>, 46 Va. App. at 719, 621 S.E.2d at 679 (emphasis added).