COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Elder, Petty and McCullough
Argued at Richmond, Virginia


JENNIFER NICOLE SHIFFLETT

                                  MEMORANDUM OPINION[*] BY

v.       Record No. 1032-11-2        JUDGE STEPHEN R. McCULLOUGH
                                      DECEMBER 4, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

Rachel Redfern, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


Jennifer Nicole Shifflett appeals from her convictions for felony child neglect. She argues

the evidence did not establish that she recklessly disregarded the lives of her children and, therefore,

the evidence was insufficient for conviction.[1] We conclude that the evidence does not establish that

the children were exposed to a probability or substantial risk of serious injury or death and,

therefore, we reverse.

BACKGROUND

Appellant is the mother of two young boys. The oldest, E.J., was seven years old at the time

of trial. The youngest was one-and-a-half years old at the time of the events at issue, and he could

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not challenge her conviction for contributing to the delinquency of a minor.

crawl, walk, and run.  James Jordan is E.J.'s father.  Appellant had custody of E.J., and his father had visitation.

An external flight of stairs leads to the front door of appellant's apartment.  At the time the events in question occurred, the younger child could not walk down these stairs unassisted.  The younger child also could not open doors by himself.

On November 21, 2010, appellant sent a text message to Jordan asking him to purchase some "school supplies:"  a can of Lysol, glue sticks, and two cans of computer cleaner, also referred to in the record as "dust remover," "dust off," and "duster."  Jordan purchased the Lysol and the dust remover, placed them in a bag, and gave the bag to his mother, Deborah Dotson.  Dotson delivered the bag to appellant.  Aside from the two cans of dust remover Jordan purchased for appellant, appellant acknowledged that at some point earlier in the day there was an additional can "out with the computer in the living room."

Jordan later called appellant's phone.  E.J. answered.  He was upset and crying.  He stated that "mommy's drinking the duster."  The call was disconnected.  E.J. called back and left a voicemail message saying that appellant could not hear Jordan's attempts to reach her by telephone.  Meanwhile, E.J. also had called appellant's mother, Teresa Shifflett, and told her that his mother was in the bathroom and that "the door was locked and the water was running and he couldn't get in."  Jordan and Teresa both drove to appellant's residence.  Teresa arrived first.

E.J. opened the door for Teresa.  She proceeded to the bathroom.  She could not open the door to the bathroom because appellant's limp body blocked the door.  Water was running in the sink.  Teresa noticed a can of computer cleaner on the bathroom floor, in front of the bathtub.  Appellant initially was incoherent.  Moments later, she sat up and said she had passed out, or words to that effect.  Appellant then rose and went into the living room and sat on the couch.  At one point, she walked into the kitchen and then went back to the living room.

Teresa initially took the can of dust remover from the bathroom and placed it on a window ledge in the kitchen. When she later went back into the kitchen to look for it, she noticed that the can was gone. She asked appellant what had happened to the can. Appellant said that it was in the trash. The can was not there, however. Teresa later found the dust remover can in a kitchen cabinet, near some pots and pans. Teresa took the can with her. Appellant began screaming, begging Teresa not to take appellant's children. Teresa later gave the can she retrieved from the kitchen to a detective. When Jordan arrived, about fifteen to twenty minutes after he had received the voicemail, Teresa was there with the children, preparing to leave the residence. Jordan took his son and went inside to retrieve the second can of dust remover he had purchased for appellant.

A toxicologist testified as an expert for the prosecution. He explained that snorting or huffing dust remover can produce a euphoric effect, but it also can "cause dizziness, lightheadedness, disorientation, a sense of apathy or indifference" as well as create nausea and headaches. The expert testified that he would not expect to see these effects in an individual who uses the product as it is intended to be used. He explained that the chemical involved is short acting, and its effects last from a few minutes to maybe thirty minutes in duration. Inhaling this substance can be lethal and "can lead to unconsciousness, coma and death due to cardiac arrhythmia." The can of dust remover, which was introduced as an exhibit at trial, contains the following warning label: "[a]buse by inhaling contents may cause INSTANT DEATH or injury."

Appellant claimed that she passed out from fumes that were generated while she was cleaning the bathroom with the door closed. The day after the incident, appellant called Jordan and acknowledged in a voicemail that she had "f***ed up." At trial, appellant acknowledged that she had lied to her mother when she told her mother she had thrown away the can of dust remover.

Appellant was charged with two counts of felony child neglect and one count of contributing to the delinquency of a minor. At her jury trial, appellant moved to strike the evidence.

The court denied the motion and submitted the case to the jury. The jury convicted appellant on all charges. She filed a post-trial motion to set aside the jury's verdict. After hearing argument on that motion, the court denied it and imposed a sentence of 10 days in prison for each charge.

ANALYSIS

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

When faced with a challenge to the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). A reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)). The reviewing court asks itself instead whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). Moreover, "[t]he inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

Code § 18.2-371.1(B)(1) provides in relevant part that "[a]ny parent . . . responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony."

> To support a conviction under this statute, the Commonwealth had to establish that [Shifflett], through her willful act or omission, showed a reckless disregard for her son's life. Such "reckless disregard" can be shown by conduct that subjects a child to *a substantial risk of serious injury, as well as to a risk of death,* because exposure to either type of risk can endanger the child's life.

Jones v. Commonwealth, 272 Va. 692, 698, 636 S.E.2d 403, 406 (2006) (emphasis added). The terms "substantial risk" of serious injury or a "probability" of serious injury are synonymous or interchangeable for purposes of the analysis under Code § 18.2-371.1(B)(1). Id. The conduct prohibited by this statute is criminal negligence. Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 357 (2004). "Criminal negligence is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts." Id.

Under the standard of review, it is manifest that, contrary to appellant's sworn testimony, she deliberately inhaled dust remover. This conclusion emerges from appellant's request to her former boyfriend to purchase the dust remover, from E.J.'s statement that "mommy's drinking the duster," from her passing out and her initial incoherence, and from her acknowledgement after the fact that she had "f***ed up." Second, by deliberately inhaling the dust remover, appellant incapacitated herself and thereby left the children unattended in the apartment. Third, it is apparent that she inhaled the can of remover in front of E.J. The case thus turns on whether appellant's actions created a "substantial risk" or a "probability" of serious injury or death to the children.

A number of cases inform our analysis of the issue. In Wood v. Commonwealth, 57 Va. App. 286, 292-95, S.E.2d 810, 812-14 (2010), the defendant incapacitated herself through a combination of drinking alcohol and consuming the drug Ambien. Then,

> while in a semi-conscious state, appellant took her children out of the shelter of their home and drove to a public parking lot surrounded by moving vehicles and strangers. Although the children were belted into safety seats, they were nevertheless

> exposed to danger, as demonstrated by the young boy's ability to
> open and shut the back door.

Id. at 300, 701 S.E.2d at 816. In contrast, the children here were inside the familiar environment of the home rather than in a vehicle parked in a public parking lot. The record does not reveal a danger within the home that rises to the level of the dangers the children faced in Wood, such as moving vehicles and strangers, and an intoxicated mother who was driving around in that condition.

The facts at hand are also distinguishable from those in Jones. In that case, the defendant left a medicine bottle containing fourteen capsules of heroin in the child's bedroom within arm's reach of a young boy. In addition, appellant "sold approximately twenty capsules of heroin daily from the apartment." 272 Va. at 696, 636 S.E.2d at 404-05. The Supreme Court held that "[t]he totality of this evidence, including the presence of harmful drugs within arm's reach of an unattended child and the child's placement within a drug house with the attendant dangers that entailed, is sufficient to support [appellant's] conviction under Code § 18.2-371.1(B)(1)." Id. at 701, 636 S.E.2d at 408. The Court found that under an objective standard, appellant's actions created a "substantial risk of serious injury." Id. In the case at bar, we have no evidence of the possession of illegal drugs or drug dealing.[2] The facts do establish that appellant ingested dust remover in front of the older child, and there was evidence that, at some earlier point in the day, another can of dust remover was "out with the computer in the living room." It is not clear if that can was still out and accessible to the children, but even if it was, there is a material difference

---

[2] In Carosi v. Commonwealth, 280 Va. 545, 701 S.E.2d 441 (2010), the Supreme Court upheld a conviction for child endangerment under Code § 40.1-103(A) based on the fact that the defendant had permitted illegal drugs to be kept in her home in a place accessible to the children. Of significance to the Court was the fact that illegal drugs stand on a different footing than "sharp knives in the kitchen, chemicals under the sink, prescription drugs in the medicine cabinet, and a lawfully possessed unloaded gun in the closet," because the latter are "possessed by the parent or custodian for lawful purposes, whereas drugs that are illegally present in the home are not." Id. at 555-56, 701 S.E.2d at 447. No illegal drugs were present here.

between having a can of dust remover or other legal but potentially toxic substance somewhere in the apartment and having capsules of heroin and cocaine residue on a plate, in the child's room, within arm's reach of the child. In addition, appellant's behavior, far from prompting emulation, actually frightened E.J. Therefore, the facts in this case are distinguishable from those in Jones.

In Barrett v. Commonwealth, 268 Va. 170, 180, 597 S.E.2d 104, 108-09 (2004), the defendant was asleep after drinking a lot of beer, thus leaving the children unsupervised for an extended period of time. Tragically, the older child drowned the younger child in the bathtub as the defendant slept. The Supreme Court upheld Barrett's convictions under Code § 18.2-371.1(B)(1) because she was "fully aware of [the older child's] propensity for attempting to injure [the younger child] but recklessly disregarded those warning symptoms in neglect of her duty to protect both children." Id. at 184, 597 S.E.2d at 111. The defendant knew that the older child could turn on the water, could pick up the younger child, and shortly before the younger child's death, she had seen the older child pull the younger child head first into the tub. Id. at 185, 597 S.E.2d at 111-12. In short, the facts revealed "a disaster just waiting to happen, a disaster any reasonable person would consider likely to result in injury to [Barrett's children]." Id. at 185, 597 S.E.2d at 112. The facts here are markedly different.

More closely analogous is Morris v. Commonwealth, 272 Va. 732, 636 S.E.2d 436 (2006). In Morris, the defendant fell asleep with the children after double-bolting the trailer door. Id. at 740, 636 S.E.2d at 440. The children were able to unlock the door and get outside. They were found playing in some woods nearby. Id. at 735, 636 S.E.2d at 437. The Supreme Court found the evidence insufficient for conviction under Code § 18.2-371.1(B)(1). The Court concluded that appellant "had no reason to believe her children would be in any danger while she was asleep with them, particularly after she had double-locked the trailer door." Id. at 740, 636 S.E.2d at 440. The Court also found it was "mere speculation" to say that the defendant was under the influence of

alcohol or drugs.  Id.  The Court did not suggest that incapacitation caused by the deliberate ingestion of alcohol or drugs, which causes the children to be unattended for *any* period of time, would be sufficient for conviction.  Instead, the Court reiterated the standard articulated in Barrett:  the prosecution must show that a defendant's act or omission must occur "'under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned.'"  Id. at 739, 636 S.E.2d at 440 (quoting Barrett, 268 Va. at 183, 597 S.E.2d at 111).[3]

The common thread that runs through Wood, Jones, Barrett, and Morris is that the Commonwealth's evidence must establish the presence of an appreciable danger to the children that exposes them to a probability or a substantial risk of death or serious injury, a risk that makes it "not improbable that injury will be occasioned."  Morris, 272 Va. at 739, 636 S.E.2d at 440.  In this instance, the record does not establish the presence of such a danger.  There certainly existed a *possibility* of harm to the children.  That possibility alone, however, is insufficient for conviction under Code § 18.2-371.1(B)(1).

Policing the line between the ever present "possibility" of serious injury and the more concrete "probability" or "substantial risk" of serious injury or death can present difficult challenges.  Unquestionably, leaving children, particularly very young children, unattended for an extended period of time creates a danger that such children will harm themselves.  See Duncan v. Commonwealth, 267 Va. 377, 593 S.E.2d 210 (2004).  Cf. Barnes v. Commonwealth, 47 Va. App. 105, 622 S.E.2d 278 (2005) (upholding conviction under analogous statute, Code § 40.1-103(A), when mother left young children unattended in an unlocked apartment for a significant period of time).  Significantly here, the Commonwealth's own evidence established that huffing or sniffing

---

[3] We note that the facts highlighted by the dissent in Morris are not found in this record. See id. at 743, 636 S.E.2d at 442.

dust remover produces only a brief period of incapacitation. The Commonwealth's expert testified that the effects of huffing or sniffing dust remover "can last from a few minutes upwards to maybe thirty minutes in duration." App. at 312. See also App. at 313 ("The onset occurs within fifteen seconds but can last minutes."). Under an objective standard, appellant could expect that sniffing dust remover would result in her incapacitation, thereby leaving the children unattended in the home for that period of time. Without additional evidence in the record of a substantial risk or probability of serious injury or death to the children arising from environmental or human factors in that time frame, appellant's actions do not rise to the level required for a felony conviction under Code § 18.2-371.1(B)(1).

We in no way condone appellant's illegal behavior, which certainly constitutes appalling parenting. The statute, however, does not punish appalling parenting. It prohibits a "willful act or omission in the care of such child [that is] so gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371.1(B)(1). The evidence is insufficient on this record to sustain appellant's convictions.

## CONCLUSION

We reverse appellant's convictions for felony child neglect.

<u>Reversed.</u>