LOGUE, J.
James Thompson raises several challenges to his convictions of possession of drug paraphernalia and child neglect not causing great bodily harm. We write to address the only issue that merits discussion—whether competent, substantial evidence supports his conviction of child neglect.
On November 21, 2011, a detective noticed Thompson standing on a sidewalk with a , two-year-old child in a location known for drug sales. Over the course of twenty to twenty-five minutes, the detective observed Thompson engage in six hand-to-hand narcotic sales with the child in his arms. A jury ultimately found Thompson guilty of child neglect not causing great bodily harm based on these facts. We affirm.[1]
The State was not required to prove that the child suffered “great bodily harm, permanent disability, or permanent disfigurement,” but it was necessary to establish that Thompson “willfully or by culpable negligence” neglected the child. § 827.03(3)(c), Fla. Stat. (2011) (renumbered § 827.03(2)(d) (2012)). The definition of child neglect, as applied to this case, is “a caregiver’s failure or omission to provide a child with the care, supervision, and services necessary to maintain a child’s physical and mental health ... that a prudent person would consider essential for the well-being of the child.” § 827.03(3)(a)l, Fla. Stat. (2011) (renumbered § 827.03(1)(e)1 (2012)). Such a failure or omission “may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death, to a child.” § 827.03(3)(a)2, Fla. Stat. (2011) (renumbered § 827.03(1)(e)2 (2012)).
We find little difficulty in concluding that Thompson’s willful exposure of his two-year-old child to multiple drug transactions could reasonably be expected to result in serious physical injury or a substantial risk of death to the child. As this court has already recognized, “drug ripoffs” are “common place” in our community “and usually involve violence with a firearm resulting in death or injury.” Reyes v. State, 581 So.2d 932, 934 (Fla. 3d DCA 1991).
Several out-of-state jurisdictions have addressed similar circumstances and held that such conduct constitutes child neglect. See Cleasant v. State, 779 N.E.2d 1260, 1263 (Ind.App.2004) (holding that the knowing exposure of a child to a drug deal constituted child neglect); see also Jones *379 v. Commonwealth, 272 Va. 692, 636 S.E.2d 403, 408 (2006) (upholding a conviction of child neglect based on the defendant’s actions in leaving a child unattended in the presence of illegal drugs and exposing the child to the illicit drug trade). In Cleas-ant, for example, the court upheld a conviction of child neglect based on a defendant’s knowing exposure of his one-year-old child to a drug deal. 779 N.E.2d at 1263. In doing so, the court reasoned that drug dealing involves inherent dangers. Id. at 1262-63. Likewise, in Jones, the court recognized that a defendant knew or should have known that routinely selling illegal drugs in the presence of her child “created a substantial risk of serious injury from the dangers inherent in the illicit drug trade.” 636 S.E.2d at 408. We agree.
Affirmed.

. We are reviewing the denial of a motion for judgment of acquittal. "In moving for a judgment of acquittal, a defendant ‘admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.' " Beasley v. State, 774 So.2d 649, 657 (Fla.2000) (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)).