UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


RIANA MICHELLE RICH

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES

v.      Record No. 0565-14-1

NOVEMBER 10, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Glenn R. Croshaw, Judge

Kevin E. Martingayle (Bischoff Martingayle P.C., on briefs), for
appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Riana Michelle Rich (appellant) was convicted in a bench trial of one count of DUI in

violation of Code § 18.2-266 and one count of DUI maiming in violation of Code § 18.2-51.4.[1]

Appellant argues on appeal that the evidence was insufficient to prove the causation element of the

DUI maiming charge pursuant to Code § 18.2-51.4. In addition, appellant argues that the evidence

was insufficient to prove the criminal negligence element of the same charge as set forth by the

same statute. For the following reasons, we affirm the trial court.

I. BACKGROUND

We consider the evidence on appeal "'in the light most favorable to the Commonwealth as

we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not contest the sufficiency of the evidence finding her guilty of DUI in
violation of Code § 18.2-266.

330, 601 S.E.2d 555, 574 (2004)).  At trial, Daja Young (Young) testified that in the early morning hours of August 6, 2011, she was traveling westbound toward Norfolk on Virginia Beach Boulevard.  As she was driving down that street, she noticed a man on a medical scooter crossing the street from the Convention Center to the other side of the street across her path of travel.  She stopped and allowed him to cross, and told him to be careful because "if I was anybody else driving fast, he would have gotten hit if I wasn't cautious."  According to Young, the victim was traveling at around two to three miles per hour.

As Young continued down the street, she noticed a vehicle traveling eastbound in the opposite lane as the scooter was still in the process of crossing the street.  In Young's estimation, that vehicle was traveling about twenty-five or thirty miles per hour.  After that vehicle passed Young, she heard a crash behind her.  Through her rearview mirror, Young indicated that she saw "everything scatter . . . I seen the wheelchair go up and everything detach."  Young testified that only a very brief time elapsed from the time she allowed the victim to pass to when she heard the crash.  Realizing there had been an accident, Young returned to the scene where she found the victim lying on the ground and where she testified that appellant – the driver of the vehicle that crashed into the scooter – was "just panicking" and "was scared."  According to Young, appellant's boyfriend, who had been riding as a passenger in appellant's car, was "extremely intoxicated" based on the way he was talking.  When Young asked appellant what had happened, "[s]he said she was just looking down.  And then she said – that's it."  Young also testified that the victim was operating the scooter in an erratic fashion as he tried to make his way across the street.  The scooter did not have any lights or reflectors on it, although Young testified that she did not need to turn on her bright lights in order to see the victim.

Just around the time of the crash, Officer Kolby Reese was in the Pavilion parking lot in the 900 block of Virginia Beach Boulevard.  All of a sudden, Officer Reese heard "what sounded

like a motor vehicle collision" coming from "probably 150 feet, 200 feet" away from where the officers were stationed. Officer Reese went promptly over to the scene, where he heard appellant say that "she looked down for only a second and didn't see the scooter."

Officer Colin Mack, another officer on the scene, spoke with appellant, administered field sobriety tests on her, and transported her to the jail. He stated that appellant had a very strong odor of alcohol coming from her breath; had bloodshot, watery, and glassy eyes; and was swaying. After appellant then performed poorly on the field sobriety tests, Officer Mack placed appellant under arrest. During an interview, appellant admitted to consuming alcohol that night. She also told the officer that she leaned over so that her boyfriend could light her cigarette for her. Appellant even demonstrated this action to Officer Mack, who described her actions by stating, "She basically leaned forward and put her head to the right where [the boyfriend] was and took her eyes off the road." As she took her eyes off the road, the crash had occurred.

At 4:01 a.m. – approximately ninety minutes after the collision – appellant took a breath test, which registered a blood alcohol content ("BAC") of .13. During the administration of the breath test, appellant told Officer Mack that she had gotten only two hours of sleep the night before – waking up at 8:00 a.m. the next day. Melissa Kennedy (Kennedy), Supervisor of the Breath Alcohol section of the Richmond office of the Department of Forensic Science, testified that a BAC of .05 is the point at which reaction time starts to slow. Kennedy testified that, at a BAC of .10, a person's glare recovery can be affected, which means that nighttime driving is more difficult, and that between .10 and .15, a person can have slurred speech and staggering. She also testified that being intoxicated slows a person down in recognizing that there might be a problem and in responding to a problem. Finally, Kennedy stated that being impaired by alcohol slows everything down for the person under the influence of alcohol, such as muscle reactions and perception of time. Dr. Alphonse Poklis, testifying for the defense, testified as to the

- 3 -

significance of the victim's BAC level of .25 and to how that level of intoxication would have impaired him.

Officer Ted Walters, who was part of the Fatal Crash team at the time of the offense and qualified as an expert witness in the physical characteristics of the accident, testified about his involvement in the crash investigation. Officer Walters acknowledged on cross-examination that he could not know precisely how long the scooter had been sitting in the road before the crash. However, based on the reconstruction analysis he performed, Officer Walters determined that the front driver's side of appellant's vehicle impacted the right side of the scooter. He provided pictures of the scooter and the car lined up against one another as they would have at the time of impact, illustrating that the scooter was perpendicular to the car. The photographs, introduced into evidence as Commonwealth's Exhibit 17, were sufficiently clear to allow the trial court to observe the absence of any skid marks in the roadway behind appellant's stopped car.

The trial court ultimately found appellant not guilty of DUI manslaughter, guilty of DUI maiming, and guilty of the DUI itself. In explaining his ruling, the trial court said:

> On the count of driving under the influence, reckless, where the victim is permanently impaired, the court finds the defendant guilty. The court believes her conduct was gross, wanton, and culpable such as to show a disregard for human life.
>
> In addition to the alcohol, the other factors that contributed to that gross, wanton, and culpable finding were sleep deprivation, were the distracted [sic], and failure to maintain a proper lookout. In and of itself the act of asking for a cigarette to be lit was reckless while diving an automobile.
>
> The defendant further failed to brake, and failure [sic] to keep a proper lookout, as I indicated, in that another driver in the same place more or less successfully avoided the victim in this case.

This appeal followed.

## II. ANALYSIS

### Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### Appellant as the Cause of the Victim's Injuries

Code § 18.2-51.4 states, in relevant part:

> Any person who, as a result of driving while intoxicated in violation of § 18.2-266 or any local ordinance substantially similar thereto in a manner so gross, wanton and culpable as to show a reckless disregard for human life, unintentionally causes the serious bodily injury of another person resulting in permanent and significant physical impairment shall be guilty of a Class 6 felony.

Appellant argues that the Commonwealth failed to prove the causation element of Code § 18.2-51.4.[2] A proximate cause is "'an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred.'" Davis v. Commonwealth, 57 Va. App. 446, 462, 703 S.E.2d 259, 266 (2011) (quoting Brown v. Commonwealth, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009)). "'There can be more than one proximate cause [of an incident] and liability attaches to each person whose negligent act results in the victim's injury or death.'" Id. (quoting Gallimore v. Commonwealth, 246 Va. 441, 447, 436 S.E.2d 421, 425 (1993)). Only if the conduct of the deceased amounts to an independent, intervening act *alone causing the fatal injury* can the accused be exonerated from liability for his or her criminal negligence. Stevens v. Commonwealth, 44 Va. App. 122, 140, 603 S.E.2d 642, 651 (2004) (citing Mayo v. Commonwealth, 218 Va. 644, 647, 238 S.E.2d 831, 833 (1977) (emphasis added)). "Therefore, the conduct of another party plays no part in the case, unless that conduct is proven to be an independent, intervening cause, rendering the defendant's negligence so remote it ceases to be a proximate cause of the accident." Id.

Considering the evidence in the light most favorable to the Commonwealth, as we must since the Commonwealth prevailed below, we hold that the evidence was sufficient for a rational factfinder to conclude that appellant's actions caused the injury in this case. First, the evidence at trial was sufficient for a rational factfinder to conclude that – but for appellant's acts and omissions – the accident would not have occurred. On the night of the accident, appellant was driving while intoxicated. The evidence also showed that appellant was sleep-deprived and fatigued, based on her admission to Officer Mack that she only slept for two hours the previous

---

[2] While Virginia appellate courts have not yet considered the causation element in this statute, the Court notes that the same causation language has been interpreted in Code § 18.2-36.1. The case law surrounding Code § 18.2-36.1 provides the necessary legal framework for our analysis.

night and had been awake since 8:00 a.m. of the previous day. Further, appellant admitted to inattentiveness while driving, telling Officer Mack that she took her eyes off the road long enough for her intoxicated boyfriend to light her cigarette. In addition, Officer Walters testified that there were three streetlights in the area. Young testified that the weather conditions were clear at the time of the accident and that she was able to see the victim in time to allow him to cross the street. This evidence is more than sufficient to allow a rational trier of fact to conclude that appellant was the proximate cause of the accident. See Auman v. Commonwealth, 2014 Va. App. LEXIS 347, at *12-13 (Va. Ct. App. Oct. 21, 2014) (finding evidence sufficient to prove causation where the defendant was drunk, swerved twice off the road, looked down and reached for her coffee just before hitting the victim, and barely slowed down at all before impact).

Second, even though there was evidence that the victim was highly intoxicated and was operating his scooter in an erratic fashion, the evidence before the trial court failed to demonstrate that the victim's actions amounted to an independent, intervening act that *alone* caused the victim's injuries. Stevens, 44 Va. App. at 140, 603 S.E.2d at 651. In Davis, the defendant argued that his sending text messages, rather than his driving under the influence of alcohol, caused him to strike and kill the victim. Davis, 57 Va. App. at 462, 703 S.E.2d at 267. This Court affirmed the defendant's aggravated involuntary manslaughter conviction on the ground that the defendant's driving under the influence caused the victim's death. Id. at 464-65, 703 S.E.2d at 268. In that case, the Court reasoned that the "jury was entitled to reject appellant's testimony that he swerved to miss [the victim], and conclude that appellant had time to take evasive action, but because of his intoxicated state, failed to do so." Id. at 463, 703 S.E.2d at 267. The Court made that ruling despite the fact that the victim had been lying in the road at the time of the accident. Id.

In light of appellant's admitted inattentiveness while driving, her voluntary consumption of alcohol up to and well beyond the point of intoxication, and her voluntary decision to drive while having so little sleep over a twenty-four-hour period, we find that appellant's actions formed a natural and continuous sequence – unbroken by a superseding cause – that caused this accident. Id. at 462, 703 S.E.2d at 266. Without appellant's actions, we find that this accident would not have occurred – a conclusion supported by the fact that Young avoided the same victim on the same roadway only moments before this accident. Therefore, the evidence was sufficient for a rational trier of fact to conclude that the essential elements of causation had been proven beyond a reasonable doubt.

Appellant's Driving Behavior as Criminally Negligent

As stated *supra*, a conviction under Code § 18.2-51.4 also requires proof of criminal negligence. Appellant argues that the Commonwealth failed to prove criminal negligence beyond a reasonable doubt. Code § 18.2-51.4 "incorporates, by its terms, the culpability standard found in common law criminal negligence." Riley v. Commonwealth, 277 Va. 467, 483, 675 S.E.2d 168, 177 (2009). "Conduct that is 'gross, wanton and culpable' demonstrating a 'reckless disregard for human life' is synonymous with 'criminal negligence.'" Id. (quoting Jones v. Commonwealth, 272 Va. 692, 701, 636 S.E.2d 403, 408 (2006) (internal citation omitted)). "'Criminal negligence is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts.'" Id. at 483-84, 675 S.E.2d at 177 (quoting Jones, 272 Va. at 701, 636 S.E.2d at 408).

Criminal negligence in the context of Code § 18.2-51.4 has been defined in terms of gross negligence:

> "'Gross negligence' is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others,

under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts."

Id. at 484, 675 S.E.2d at 177 (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)). The trial court's findings on criminal negligence "are examined on appeal by reviewing the totality of the evidence." Noakes v. Commonwealth, 54 Va. App. 577, 585, 681 S.E.2d 48, 52 (2009) (*en banc*), aff'd, 280 Va. 338, 699 S.E.2d 284 (2010).

Considering the evidence in the light most favorable to the Commonwealth, we hold that the evidence was sufficient for a rational factfinder to conclude that appellant's actions were criminally negligent. Appellant admitted to one of the officers at the scene that she leaned over towards her intoxicated boyfriend in the passenger seat to light a cigarette. Appellant even demonstrated this action to Officer Mack, who described her actions by stating, "She basically leaned forward and put her head to the right where [the boyfriend] was and took her eyes off the road" – presumably for the amount of time it would require a person to light a cigarette. While she claimed that she only took her eyes off the road for a second, the trial court did not have to believe her self-serving statement that she took her eyes off the road for *only* a second. Appellant performed poorly on a series of field sobriety tests administered shortly after the accident. Appellant's BAC was tested approximately ninety minutes after the accident and was recorded at .13 – well above the legal limit. Appellant also told officers that she had only two hours of sleep the previous night, from which the trial court could and did infer that she was fatigued while driving. The trial court also inferred from the lack of skid marks at the scene of the accident that appellant's inattentiveness or intoxication or fatigue – or some combination of the three – prevented her from applying the brakes.

When dealing with circumstantial evidence, the accumulation of various facts and inferences, each mounting upon the others, can indeed provide sufficient evidence to find a

defendant guilty beyond a reasonable doubt. <u>Ervin v. Commonwealth</u>, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (*en banc*). Given appellant's admitted inattentiveness while driving, her voluntary consumption of alcohol up to and well beyond the point of intoxication, and her voluntary decision to drive while having so little sleep over a twenty-four-hour period, appellant acted with "a reckless or indifferent disregard for the safety of others" in violation of Code § 18.2-51.4. <u>Riley</u>, 277 Va. at 484, 675 S.E.2d at 177. Therefore, the evidence was sufficient for a rational trier of fact to conclude that the essential elements of criminal negligence had been proven beyond a reasonable doubt.

### III. CONCLUSION

In summary, we find that a rational trier of fact could have found that appellant caused the accident in this case. Likewise, we find that a rational trier of fact could have found that appellant's actions were criminally negligent. Therefore, we affirm appellant's conviction for DUI maiming in violation of Code § 18.2-51.4.

<u>Affirmed.</u>