# IN THE COURT OF APPEALS OF IOWA

No. 16-0673
Filed June 15, 2016

**IN THE INTEREST OF A.G., T.G., AND E.G.,**
**Minor children,**

**A.G., T.G., AND E.G., Minor Children,**
Appellants.

_____

Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

A guardian ad litem appeals the juvenile court's dismissal of the State's child-in-need-of-assistance petitions. **AFFIRMED**.

Julie R. DeVries of DeVries Law Office, Centerville, for appellants minor children.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Jonathan Willier, Centerville, for appellee mother.

James R. Underwood of Underwood Law Office, Centerville, for appellee father.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

The guardian ad litem for three children—ages seven, five, and four—appeals the juvenile court's dismissal of the State's petitions seeking to have them adjudicated in need of assistance under Iowa Code section 232.2(6)(c)(2) and .2(6)(n) (2015). The State's concern was drug paraphernalia found in the mother's home during execution of a search warrant. The juvenile court decided the State did not meet its burden to show by clear and convincing evidence that the children had suffered or were imminently likely to suffer harmful effects as a result of their mother's failure to exercise a reasonable degree of care in supervising them. Because our review of the record likewise reveals insufficient evidence to justify adjudication, we affirm.

## I.      Facts and Prior Proceedings

B.E. and R.G. have five children together, ranging in age from twelve to four years old. The children were living with their mother, B.E., in January 2016 when Centerville police officers executed a search warrant at their home. The police were investigating the mother for identity theft, but during the search officers seized seven items of drug paraphernalia containing residue, described as follows:

1. Light bulb converted to pipe (test for meth) found under [B.E.'s] bed
2. Glass pipe (test for meth) found under [B.E.'s] bed
3. Glass pipe (test for meth) found in box in the hallway
4. Glass pipe (test for meth) found in kitchen cabinet above sink
5. Spoon (test for meth) found on basement stairs
6. Pepsi can converted to pipe with marijuana residue found on floor of basement
7. Glass bong with marijuana residue found on floor of basement

The presence of the drug paraphernalia prompted the police to contact the Iowa Department of Human Services (DHS) for emergency removal of the children. DHS child protection worker Melissa Weeks responded to the police call and spoke with B.E., who denied the paraphernalia belonged to her and said she wasn't aware the items were in the home. B.E. suggested the items may have been left behind by her former live-in boyfriend. The mother did not appear to be under the influence of drugs or alcohol when she spoke to the police and the DHS workers. Other than the residue on the paraphernalia, the police did not find any illegal drugs in the home. Weeks interviewed the older children, and they did not report witnessing any substance abuse or drug use in their mother's home. The DHS did not test the children for exposure to illegal drugs. The DHS placed the children with their father based on a safety plan entered into with the mother.

DHS case worker Marybeth McCulley-Hoffman also arrived at B.E.'s home during execution of the search warrant. B.E. had been participating in voluntary services with the help of DHS and McCulley-Hoffman for about six months during late 2015. The services followed a report that the mother's boyfriend had pinched and twisted seven-year-old A.G.'s ear, causing a bruise. In a family case plan dated October 20, 2015, McCulley-Hoffman opined the children were well-bonded to their mother and father; the parents had age-appropriate expectations for the children; the children were well-behaved, followed directions, and appeared to have their needs met. McCulley-Hoffman had visited B.E.'s home on several occasions and reported it was "clean and appropriate with no observable safety concerns."

4

On January 22, 2016, the State filed petitions alleging all five children—M.G., I.G., A.G., T.G., and E.G.—were children in need of assistance (CINA) under section 232.2(6)(c)(2) and (n). The juvenile court held an adjudicatory hearing on March 31, 2016. In an order dated April 4, 2016, the court dismissed the petitions, finding insufficient evidence to support the State's allegations. *See* Iowa Code § 232.96(8).

The guardian ad litem (GAL) filed a petition on appeal challenging the court's dismissal as to the three youngest children: A.G., T.G. and E.G. The State filed a statement in support of the GAL's position. The mother filed a brief seeking to uphold the juvenile court's order.

## II. Standard of Review

We review CINA proceedings de novo, which means after assessing both the facts and the law, we resolve the parties' rights anew. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). At the same time, we are "influenced by the favorable vantage point" of the juvenile court and give weight to its factual findings. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). As in all juvenile proceedings, our fundamental concern is the best interests of the children. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).

CINA determinations must be supported by clear and convincing evidence. Iowa Code § 232.96(2); *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). "Clear and convincing evidence" means we harbor no serious or substantial doubts that the conclusions of law drawn from the evidence are correct. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III.    Analysis

On appeal, the GAL contends the presence of drug paraphernalia in the mother's home, left in places accessible to the children, provided sufficient grounds for adjudicating A.G., T.G., and E.G. as CINA under section 232.2(6)(c).[1]  That provision defines a CINA as "an unmarried child . . . who has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child."  Neither the State nor the GAL alleged the children actually suffered harmful effects from their mother's failure to remove the drug paraphernalia from their home.  Accordingly, the question is whether the State proved by clear and convincing evidence that the children were *imminently likely* to suffer harmful effects as a result of her failure to exercise a reasonable degree of care.

As the juvenile court recognized, neither "imminently likely" nor "harmful effects" are defined in Iowa Code chapter 232.  Our supreme court tackled the task of defining these terms in *In re J.S.*, 846 N.W.2d at 41-43.  "Harmful effects" has been broadly defined as pertaining to "the physical, mental or social welfare of a child."  *Id.* at 41.  "Imminently likely" has been defined as "ready to take place," "near at hand," "hanging threateningly over one's head," "menacingly near," "impending or about to occur," and "on the point of happening."  *Id.* at 43.

Using these definitions as a framework, the juvenile court reached the following conclusion:

---

[1] The GAL does not pursue the argument that the children could have been adjudicated under section 232.2(6)(n).  Accordingly, we do not analyze that alternative ground.

6

While there is some evidence the children may have had access to some, or all, of the items of drug paraphernalia, there was no evidence presented how contact with those items of drug paraphernalia may have caused harm to the physical, mental or social welfare of the children. In addition, even if evidence had been presented to establish how the drug paraphernalia may have resulted in harm to the children, there is not clear and convincing evidence that any prospective harm was imminently likely to occur.

After our de novo review of the record, we reach the same conclusion as the juvenile court. The GAL relies on *Jones v. Commonwealth*, 636 S.E.2d 403, 407 (Va. 2006), for the proposition that "inherent dangers" exist when children have access to illegal drugs and drug paraphernalia. In *Jones*, the Virginia court upheld a conviction for felony child neglect when the mother left heroin capsules within reach of her eight-year-old son. *See id.* at 408. But we see an important distinction between exposing children to controlled substances and possessing paraphernalia alone. *See generally State v. Baker*, 912 S.W.2d 541, 545 (Mo. Ct. App. 1995) (holding mere presence of burnt residue inside pipe did not support finding of possession of drug itself). No witness testified at the CINA hearing that access to drug residue on the paraphernalia posed the same danger to children as access to a measureable amount of an illegal drug. The police officer who conducted the search testified he could not tell how old the residue was or when the paraphernalia had last been used to consume drugs.

The GAL also cites *J.S.*, 846 N.W.2d at 37, for the proposition that our supreme court would have "no difficulty" in justifying state intervention into a family under section 232.2(6)(c)(2) when a parent has a methamphetamine addiction. But in the instant case, the State offered no evidence B.E. had been using illegal drugs, much less suffered from an addiction. Case worker

McCulley-Hoffman testified B.E. had tested negative for drugs during the voluntary provision of services in late 2015. The children did not report any concerns about drug use by their mother to child protection worker Weeks, and Weeks opted not to have them tested for exposure to drugs as part of the protective assessment.

Finally, the GAL argues the children should have been adjudicated CINA because B.E.'s home was in disarray, the children's beds were piled with clothing and other items, and B.E. was sleeping in the basement, "thus leaving unsupervised young children" to open the door to law enforcement arriving to execute the search warrant. The officer testified the oldest child, twelve-year-old M.G., answered the door. We see no merit to the GAL's claim that a twelve-year-old must be supervised when answering the door. Likewise, we are not impressed that the condition of the house constituted clear and convincing evidence the children were likely to suffer harm from the mother's failure to exercise a reasonable degree of care when supervising them. *Contra In re M.H.*, 444 N.W.2d 110, 111 (Iowa 1989) (upholding CINA adjudication because family history was marked by instability and variety of factors pointed to need for state intervention, including denial of medical attention and unclean home).

On this record, we agree with the juvenile court's determination that the State did not establish its grounds for CINA adjudication by clear and convincing evidence.

**AFFIRMED.**